**Babaturde Rasheed OLUREBI,**
**Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 01–90–00685–CR.**

Court of Appeals of Texas,
Houston (1st Dist.).

Oct. 17, 1991.

**852**

Kris Woldy, Houston, for appellant.

John B. Holmes, Jr., Harris County Dist. Atty., Linda West, Bill Patterson, Asst. Harris County Dist. Attys., for appellee.

Before DUNN, SAM BASS and HUGHES, JJ.

## OPINION

DUNN, Justice.

A jury convicted appellant of credit card abuse, and the trial court assessed his punishment at 10 years probation and a $2,000 fine. We affirm.

A two-count indictment charged appellant with credit card abuse. The State abandoned count I of the indictment. Count II of the indictment charged that appellant violated TEX. PENAL CODE ANN. § 32.31(b)(2) (Vernon 1989), which states a person commits the offense of credit card abuse if he uses a fictitious credit card with the intent to obtain property or service.

In September 1988, Chevron received a credit card application from a "Wale R. Lawson." In October 1988, Chevron issued one of its credit cards to "Wale R. Lawson," and sent it to an address on Algiers street in Houston, which was listed in the credit card application.

After Chevron failed to receive any payments on the credit card account, Barnes, a corporate security representative for Chevron, began to investigate the account in April 1989. Barnes testified no one named "Wale R. Lawson" had a driver's license in Texas, Louisiana, Oklahoma, or New Mexico. No one by that name could be found in the tax records of Harris County. Someone else lived at the Algiers address listed in the credit card application, and she stated she had lived at that address for 30 years and had never heard of "Wale R.

Lawson." The banks and bank account numbers on the credit card application did not exist. The social security number on the application belonged to another person. The employment information on the application was false. The credit card references on the application were not valid numbers.

Barnes checked the automobile license registration receipts on a license plate number that appeared on one of the credit card receipts generated by the use of the credit card. The license plate number on the receipt belonged to a car owned by appellant.

Barnes obtained a copy of appellant's driver's license photograph and placed it in a photo array which he showed to Kaldis, owner of a Chevron station where the credit card had been used numerous times. Kaldis identified appellant as the person who had used the card.

At trial, Kaldis identified appellant as the customer he knew as "Wale R. Lawson." Kaldis testified that appellant never denied being "Wale R. Lawson." Kaldis testified that on December 7, 1988, appellant presented Kaldis the credit card to pay for a brake job and other work, and that appellant signed the receipt, "Wale R. Lawson."

At trial, appellant testified he had known Lawson since high school. He said Lawson was a Nigerian born, British citizen. Appellant claimed that Lawson lived with him from August 1988 to February 1989 when Lawson moved to London, England; that Lawson obtained the credit card while he lived with appellant; and that appellant used the credit card and signed the credit card receipts in Lawson's name with Lawson's permission.

Appellant testified he used Lawson's credit card to help him through rough times when his car needed repairs. Appellant also testified he had a valid American Express credit card in his name during November and December 1988. Appellant said that when he used Lawson's credit card, he paid Lawson back within about two weeks after appellant got paid. Appellant said that Lawson lived on Manchester street somewhere in London. Appellant

also said he used to have Lawson's telephone number in London.

■ Appellant presents four points of error. Appellant's first point of error asserts reversible error occurred when the prosecutor repeatedly questioned him about his post-arrest, pretrial silence.

Appellant sets out the following from the prosecutor's cross-examination of him:

[Prosecutor]: Now, you stated that he [Lawson] lived there [with appellant] for six months?

[Appellant]: Absolutely, sir.

[Prosecutor]: And now he's a preacher in London?

[Appellant]: Sir.

[Prosecutor]: Now he's some kind of preacher in London?

[Appellant]: Yeah. That's right. Probably might be somewhere else right now, but that's what he told me and that's where I took him, Intercontinental Airport.

[Prosecutor]: Did you ever tell this story to Chevron?

[Appellant]: Do I do what?

[Prosecutor]: About this preacher in London?

[Appellant]: To who?

[Prosecutor]: To Chevron people?

[Appellant]: Never.

[Prosecutor]: Okay. Did you ever tell the police that Mr. Lawson had fled to London.

[Appellant]: Fled to London.

[Prosecutor]: Yes, sir.

[Appellant]: No, sir. I have nothing to tell the policeman about.

[Prosecutor]: So this is the first time you've told anybody this story?

[Appellant]: Absolutely.

[Prosecutor]: Waited until this time in court some, almost a year afterwards to finally tell somebody Mr. Lawson went to London?

[Appellant]: Repeat your question, sir.

[Prosecutor]: This is the first time after almost over a year that you finally told somebody Mr. Lawson went to London?

[Appellant]: That should be with him and my lawyer. Probably I already told my lawyer when the case started, that's between me and my lawyer.

[Prosecutor]: You would agree this is the first time you have told anybody besides your lawyer?

[Appellant]: That's right.

In his brief, appellant does not appear to complain about these comments by the prosecutor because they were "not time-specific and not related to any particular individual." To the extent that the foregoing comments could be construed as comments on appellant's post-arrest silence, appellant waived any error by his failure to object at trial. *See Smith v. State,* 721 S.W.2d 844, 855 (Tex.Crim.App. 1986) (defendant's failure to object to prosecutor's impeachment of defendant's testimony with his post-arrest silence waived any error).

Appellant also sets out the following from the prosecutor's cross-examination of him:

[Prosecutor]: Isn't it true Mr. Olurebi, this is the first time you've ever told this story besides to your lawyer [sic]?

[Appellant]: Sir.

[Prosecutor]: Did you ever attempt to contact Chevron after these charges were brought and tell them hey, Mr. Lawson is in England, I know exactly where he's at. Did you ever try to do that?

[Appellant]: Who am I going to tell?

[Prosecutor]: Did you ever attempt to come to the D.A.'s Office?

[Appellant]: What D.A.—

[Appellant's counsel]: I object to that. He's been under charges since then.

[The Court]: Sustained.

Appellant sets out the following from the prosecutor's recross-examination of him:

[Prosecutor]: The point is, Mr. Olurebi, you waited until this first day of trial to say anything about this story when nobody can verify it now in trial. Right?

[Appellant's counsel]: I object to this.

[The Court]: Sustained.

[Appellant's counsel]: Counsel.

[The Court]: I've sustained your objection.

[Appellant's counsel]: Thank you, Your Honor.

Appellant argues the foregoing comments constituted impermissible comments on his post-arrest silence. Appellant presents nothing for review because he received the relief he requested, and he did not pursue his objection to an adverse ruling. *See Nethery v. State,* 692 S.W.2d 686, 701 (Tex.Crim.App.1985) (defendant must obtain an adverse ruling to preserve a matter for review), *cert. denied,* 474 U.S. 1110, 106 S.Ct. 897, 88 L.Ed.2d 931 (1986).

Appellant's first point of error is overruled.

Appellant's second point of error asserts the trial court erred in overruling his motion to quash the indictment.

The indictment, in relevant part, charged that appellant:

> on or about December 7, 1988, did then and there unlawfully with intent to obtain property and service, use a fictitious Chevron credit card, by presenting the credit card to George Kaldis, knowing that the credit card falsely purported to be issued by Chevron to Wale Lawson.

Appellant filed a motion to quash the indictment, which the trial court denied. In his motion to quash, appellant claimed the indictment failed to sufficiently identify the offense so that a subsequent prosecution for the same offense would be barred on double jeopardy grounds. Appellant also claimed the indictment failed to give him sufficient notice of the term "fictitious," which prevented him from preparing an adequate defense to the allegation. On appeal, appellant claims the indictment failed to give him sufficient notice of the term "fictitious credit card."

■ This claim involves a notice defect in form. *See generally Janecka v. State,* 739 S.W.2d 813, 819–20 (Tex.Crim.App. 1987). In deciding whether the indictment provided appellant notice adequate to prepare a defense, we first decide whether the indictment failed to convey some requisite item of "notice." *Adams v. State,* 707 S.W.2d 900, 903 (Tex.Crim.App.1986). If sufficient notice is given, the inquiry ends. *Id.* If not, we then decide whether, in the context of the case, this had an impact on appellant's ability to prepare a defense, and, finally, how great an impact. *Id.*

The Texas Court of Criminal Appeals has held that an indictment charging the defendant with using a fictitious credit card "purporting to be issued by Southwestern Bell Telephone Company to [defendant]" was not fundamentally defective. *Moallen v. State,* 690 S.W.2d 244, 245–46 (Tex.Crim. App.1985) *(Moallen I), on remand,* 699 S.W.2d 926 (Tex.App.—Houston [1st Dist.] 1985, pet. ref'd) *(Moallen II).* In *Moallen II,* this Court stated the allegations in the indictment adequately described the credit card in question by sufficiently identifying "the name, ownership, issuer, and card holder." *Moallen II,* 699 S.W.2d at 928.

■ Here, the indictment alleged that appellant used a fictitious credit card by presenting the credit card to Kaldis knowing that it, the card, "falsely purported to be issued by Chevron to Wale Lawson." The indictment defined the "fictitious credit card" as "falsely purported to be issued by Chevron to Wale Lawson." The allegations in the indictment sufficiently identified Chevron as the purported issuer and Lawson as the purported card holder. *Moallen II,* 699 S.W.2d at 928. The indictment provided appellant sufficient notice of the term "fictitious credit card." Appellant cites no authority that holds more information is required. Tex.R.App.P. 74(d).

Appellant's second point of error is overruled.

Appellant's third and fourth points of error challenge the sufficiency of the evidence to support his conviction.

■ In reviewing the sufficiency of the evidence in circumstantial and direct evidence cases, the evidence is viewed in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Butler v. State,* 769 S.W.2d 234, 239 (Tex.Crim.App.1989). In circumstantial evidence cases, the standard is whether the factfinder could rationally have excluded all reasonable hypotheses except that of the guilt of the accused. *See Williams v.*

*State,* 784 S.W.2d 428, 430 (Tex.Crim.App. 1990) (an appellate court may not second-guess the finding at trial so long as some rational factfinder could conclude that any remaining doubts or outstanding hypotheses are not reasonable); *Butler,* 769 S.W.2d at 238 n. 1.

■ Under TEX. PENAL CODE ANN. § 32.-31(b)(2) (Vernon 1989), the State is required to prove: (1) a person (2) with the intent to obtain property or service (3) uses (4) a fictitious credit card. *Moallen I,* 690 S.W.2d at 245–46. Here, the State alleged an additional element when it, in effect, alleged that appellant knew the credit card was a fictitious credit card. *See Moallen I,* 690 S.W.2d at 246 (State must show only that the defendant intended to obtain property or services). Therefore, the indictment required the State to prove: (1) appellant (2) with the intent to obtain property or service (3) used (4) a fictitious credit card (5) knowing that the credit card was fictitious. *See Whetstone v. State,* 786 S.W.2d 361, 364–65 (Tex.Crim.App.1990).

The State's factual theory at trial appears to have been that appellant, knowing Chevron purportedly issued the credit card to Lawson, used the card with the intent to obtain property or service. Appellant argues the evidence is insufficient to support a finding (1) that he knew the credit card falsely purported to be issued by Chevron to Wale Lawson, and (2) that the credit card was not in fact issued to Wale Lawson.

Relying on language from the Court of Criminal Appeals opinion in *Moallen I,* to the effect that a fictitious credit card implies there is no actual "owner" of the card, the dissenting opinion would hold the State was required to prove there was no actual "owner" of the card to establish a violation of section 32.31(b)(2). The dissenting opinion would go on to hold that the State failed to prove a violation of section 32.31(b)(2) when it proved that Chevron was the actual "owner" of the card. In other words, the dissenting opinion, in effect, would hold that no violation of section 32.31(b)(2) occurs where there is an "owner" of the card.

The question is what constitutes a "fictitious credit card." [1] In *Moallen I,* the defendant apparently used a credit card in her name that Southwestern Bell had not issued to her. 690 S.W.2d at 244. Prior case law has held that the "owner" of a credit card is the "issuer" of the credit card. *See Jones v. State,* 611 S.W.2d 87, 90 (Tex.Crim.App.1981). Thus, *Moallen I* supports the proposition that using a credit card that has no "owner" is one way of violating section 32.31(b)(2), assuming the other elements are met.

■ Here, unlike the situation in *Moallen I,* the State's theory was that appellant used a credit card purportedly issued by Chevron to Lawson. The language in *Moallen,* to the effect that a "fictitious credit card" implies there is no actual "owner" of the card, should be limited to the facts of that case where there was no actual "owner" of the card. *See Moallen I,* 690 S.W.2d at 246. In proving the "fictitious credit card" element of the offense in this case, we hold it is sufficient for the State to have proved that Chevron, in fact, did not issue the card to Lawson.

■ Appellant argues the evidence is insufficient to support a finding (1) that he knew the credit card "falsely purported to be issued by Chevron to Wale Lawson," and (2) that the credit card was not in fact issued to Lawson. Under the standard of review set out above, we hold the circumstantial evidence is sufficient to support appellant's conviction. The evidence of Chevron's unsuccessful attempts to locate Lawson, and the evidence that appellant represented himself to be Lawson when appellant used the card, is sufficient for a rational factfinder to conclude beyond a reasonable doubt that the card was not, in fact, issued to Lawson, and that appellant knew the card falsely purported to have been issued by Chevron to Lawson.

Appellant's third and fourth points of error are overruled.

The judgment is affirmed.

SAM BASS, J., dissents.

1. The legislature may want to consider defining the term "fictitious credit card."

SAM BASS, Justice, dissenting.

I respectfully dissent from the majority opinion's disposition of appellant's third and fourth points of error. I concur in the majority opinion's treatment of appellant's first and second points of error; therefore, these points will not be discussed here.

Appellant's third and fourth points of error challenge the sufficiency of the evidence to support his conviction. I agree with the majority that the indictment in this case required the State to prove: (1) appellant (2) with the intent to obtain property or service (3) used (4) a fictitious credit card (5) knowing that the credit card was fictitious. *See Whetstone v. State*, 786 S.W.2d 361, 364–65 (Tex.Crim.App.1990); *Moallen v. State*, 690 S.W.2d 244, 245–46 (Tex.Crim.App.1985), *on remand*, 699 S.W.2d 926 (Tex.App.—Houston [1st Dist.] 1985, pet. ref'd).

However, I disagree with the majority that appellant's conviction should be affirmed, and I would hold the evidence is insufficient to support appellant's conviction. The majority opinion holds that in proving the "fictitious credit card" element of the offense, it was sufficient for the State to have proved that Chevron did not, in fact, issue the card to Lawson.

In *Moallen*, the defendant was alleged to have violated TEX. PENAL CODE ANN. § 32.-31(b)(2) (Vernon 1989) by using a credit card that Southwestern Bell purportedly issued to her. *Moallen*, 690 S.W.2d at 244. Southwestern Bell apparently had not issued the card to anyone; the card was, in essence, a fake. *Id.* Otherwise, I do not see how the defendant could have violated section 32.31(b)(2) by using a Southwestern Bell credit card that Southwestern Bell had actually issued to her. *See Moallen*, 699 S.W.2d at 928–30 (Levy, J., dissenting).

The Court of Criminal Appeals in *Moallen* stated the gravamen of the offense is that the accused use a fictitious credit card, and the very fact the card is fictitious implies there is no actual owner of the card who is victimized. *Moallen*, 690 S.W.2d at 246. Prior case law has held the "owner" of a credit card is the "issuer" of the credit card. *See Jones v. State*, 611 S.W.2d 87, 90

(Tex.Crim.App.1981). Therefore, I would hold the State was required to prove there was no actual "owner" of the card to establish a violation of section 32.31(b)(2).

Here, however, since the State proved that Chevron was the actual owner of the card when it proved that Chevron issued the card, I would hold the State failed to prove that appellant used a "fictitious credit card." *Compare Moallen*, 690 S.W.2d at 246 (very fact the card is fictitious implies there is no actual owner of the card).

I would sustain appellant's third and fourth points of error.

Therefore, pursuant to *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978), and *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978), appellant is entitled to an acquittal.