**Babaturde Rasheed OLUREBI, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 1383–91.

Court of Criminal Appeals of Texas,
En Banc.

Feb. 2, 1994.

Kristine C. Woldy, Houston, for appellant.

John B. Holmes, Jr., Dist. Atty., and Linda A. West, Asst. Dist. Atty., Houston, Robert Huttash, State's Atty., Austin, for State.

*OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW*

MALONEY, Judge.

After a jury convicted appellant of the felony offense of credit card abuse under TEX.PENAL CODE ANN. § 32.31(b)(2), the trial judge sentenced him to ten years in prison, probated for ten years, and imposed a $2,000 fine. Upon direct appeal, the First Court of Appeals affirmed appellant's conviction and sentence with one justice dissenting. *Olurebi v. State,* 818 S.W.2d 851 (Tex.App.—Houston [1st Dist.] 1991). We granted appellant's petition for discretionary review to determine the meaning of the term "fictitious credit card" as it is used in TEX.PENAL CODE ANN. § 32.31(b)(2). *See* TEX.R.APP.P. 200(c)(2) & (5). We will vacate the judgment of the Court of Appeals and remand the cause for a harm analysis.

Section 32.31(b)(2) of the Texas Penal Code provides that a person commits the offense of credit card abuse if "with intent to obtain property or service, he uses a fictitious credit card or the pretended number or description of a fictitious credit card[.]" TEX.PENAL CODE ANN. § 32.31(b)(2). The indictment here alleges two counts of credit card abuse under section 32.31(b)(2), the second of which was submitted to the jury stating that on or about December 7, 1988, in Harris County, Texas, appellant:

> did then and there unlawfully with intent to obtain property and service, use a fictitious CHEVRON credit card, by presenting the credit card to GEORGE KALDIS, knowing that the credit card falsely purported to be issued by CHEVRON to WALE R. LAWSON.

The jury charge authorized conviction upon the same language as in this indictment.[1]

The record reflects that in late October 1988 Chevron issued a credit card to Wale R. Lawson based upon information stated in a Chevron credit card application purportedly signed by Lawson and dated September 7, 1988. The credit application stated that Lawson was a dentist with Hermann Hospital and that he resided at a particular address in Houston. Although the card had been used several times, Chevron did not receive any payment, which prompted an investigation of the account in April 1989. Thereafter, Chevron discovered that Lawson did not reside at the address stated on the credit application, and that an elderly woman who did not know Lawson had lived there for thirty years. Also, the bank and credit card references on the credit application were false, the social security number either did not exist or belonged to someone other than Lawson, and Lawson did not work at Hermann Hospital. A Chevron investigator testified at trial that Lawson did not have a driver's license in Texas, Louisiana, New Mexico, or Oklahoma, and that Harris County tax records did not contain Lawson's name.

A license plate number appearing on one of the credit card receipts was traced to appellant's car. The investigator obtained appellant's driver's license photograph from the Texas Department of Public Safety, and took it and several other photographs to George Kaldis, the co-owner of a Chevron station where Lawson's card had been used several times. Kaldis recognized appellant in the photospread, and testified at trial that he knew appellant as Wale Lawson and that appellant had never said Lawson was not his name or that he was borrowing Lawson's credit card.

Appellant testified at trial that Wale Lawson was his friend from high school. According to appellant, Lawson, a Nigerian and a

---

1. Ordinarily, absent a motion to quash the indictment, the State only has to allege the offense as it is worded in the penal code. *See Ex parte Porter,* 827 S.W.2d 324, 327 (Tex.Crim.App.1992) (op. on reh'g). However, if the State alleges more than what is contained in the statute, it must prove those additional factors as well. *See Langston v. State,* 855 S.W.2d 718, 721 (Tex.Crim. App.1993); *Chavez v. State,* 843 S.W.2d 586, 588 (Tex.Crim.App.1992); *Whetstone v. State,* 786 S.W.2d 361, 364 (Tex.Crim.App.1990). Under section 32.31(b)(2), the State must prove that (1) a person (2) used (3) a fictitious credit card (4) with the intent to obtain property or services. In this case, the State was also required to prove that appellant (5) presented the fictitious credit card to Kaldis (6) knowing that it falsely purported to be issued by Chevron to Lawson.

British citizen, lived with him and his wife from August 1988 to February 1989, when Lawson returned to London. Appellant further testified that he used Lawson's credit card and signed his name with his permission, that he did not know anything was wrong with the card, and that he always paid Lawson for the charges incurred on the credit card.

On direct appeal, appellant argued that the evidence was insufficient to prove (1) that he knew the credit card falsely purported to be issued by Chevron to Lawson, and (2) that the credit card was not in fact issued by Chevron to Lawson. The First Court of Appeals noted that under *Moallen v. State*, 690 S.W.2d 244, 246 (Tex.Crim.App.1985), a credit card that does not have an owner or issuer [2] is a fictitious credit card in violation of section 32.31(b)(2), but then distinguished *Moallen* as a case limited to its facts. *See Olurebi*, 818 S.W.2d at 855. In holding the evidence sufficient, the majority viewed a "fictitious credit card" as also including a credit card issued to a bogus *cardholder. Id.* The dissent, however, viewed a "fictitious credit card" as *only* a credit card without an actual owner; therefore, because "the State proved that Chevron was the actual owner of the card when it proved that Chevron issued the card," the evidence in this case was insufficient to prove appellant used a fictitious credit card. *Id.* at 856 (Bass, J., dissenting).

Appellant also argued that the trial court erred in denying his motion to quash the indictment for failure to define a "fictitious credit card." The Court of Appeals noted that in *Moallen*, this Court held "an indictment charging the defendant with using a fictitious credit card 'purporting to be issued by Southwestern Bell Telephone Company to [defendant]' was not fundamentally defective." *Olurebi*, 818 S.W.2d at 854. The Court of Appeals held that because the indictment in this case "sufficiently identified Chevron as the purported issuer and Lawson as the purported cardholder[,] ... [t]he indictment provided appellant sufficient notice of the term 'fictitious credit card.'" *Id.*

In his second and third grounds for review, appellant contends the Court of Appeals erred in holding the evidence sufficient to prove (1) that he knew the credit card falsely purported to be issued by Chevron to Lawson, and (2) that the credit card was not issued by Chevron to Lawson. Our sufficiency determination turns upon the meaning of the term "fictitious credit card." The real issue, therefore, is whether a fictitious credit card is only a credit card issued by someone other than the purported owner, in this case by someone other than Chevron, or whether a fictitious credit card may also be a credit card issued by the purported owner but to a nonexistent cardholder.

In *Moallen*, the defendant used what purported to be a Southwestern Bell Telephone Company credit card, but Southwestern Bell had not issued the card. The credit card was counterfeit. The issue in that case concerned a claim that the indictment was fundamentally defective. We stated: "The very fact that the credit card is fictitious implies there is no actual owner of the card who is victimized." *Moallen*, 690 S.W.2d at 246. In *Moallen* the credit card was fictitious because the owner purported to be Southwestern Bell, but Southwestern Bell had not issued the credit card. The question in this case is whether a fictitious credit card may also be a credit card with an actual owner but issued to a nonexistent person.

▮ Section 32.31(b)(2) provides that a person commits credit card abuse if he uses a "fictitious credit card or the pretended number or description of a fictitious credit card." TEX.PENAL CODE ANN. § 32.31(b)(2). Although the legislature has not defined the term "fictitious credit card," it has defined a "credit card" as:

> an identification card, plate, coupon, book, number, or any other device authorizing a designated *person* or bearer to obtain property or services on credit. It includes the number or description of the device if the device itself is not produced at the time

---

**2.** We have held that the owner of a credit card is the entity that issues the credit card. *See Jones v.*

*State,* 611 S.W.2d 87, 90 (Tex.Crim.App.1981).

of ordering or obtaining the property or service.

TEX.PENAL CODE ANN. § 32.31(a)(2) (emphasis added). The "cardholder" is "the *person* named on the face of the credit card to whom or for whose benefit the credit card is issued." TEX.PENAL CODE ANN. § 32.31(a)(1) (emphasis added). A "person" is "an individual, corporation, or association." TEX.PENAL CODE ANN. § 1.07(a)(27). And, an "individual" is "a human being who has been born and is alive." *Id.* § 1.07(a)(17). Given these definitions, a credit card authorizes someone who is alive to obtain property or services on credit. Thus, a "credit card" issued to a nonexistent person is not a credit card, as herein defined, because it purports, falsely, to be issued to an existent person, and as such it is a fictitious credit card. We hold that a "fictitious credit card," as that term is used in section 32.31(b)(2), is either a credit card not issued by the purported owner or a credit card with an actual owner but issued to a nonexistent cardholder.[3]

When deciding whether the evidence is sufficient to support the jury's finding of guilt, we view the evidence in the light most favorable to the jury's verdict, and determine whether a rational trier of fact could have found the elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Butler v. State*, 769 S.W.2d 234, 239 (Tex.Crim.App.1989), *overruled on other grounds by Geesa v. State*, 820 S.W.2d 154, 161 (Tex.Crim.App.1991). Viewed in the light most favorable to the jury's verdict, the evidence at trial establishes that Chevron issued a credit card to Lawson in the normal course of its business, but the information on the credit application was false, and Lawson's existence was questionable. The evidence also establishes that appellant used the card at a Chevron station misrepresenting himself as Lawson.

Because the indictment here alleged as a fictitious credit card, a credit card falsely purporting to be issued by Chevron to Lawson, the State had to prove that Chevron did not issue the credit card to Lawson. A rational jury could have concluded that Lawson did not exist given Chevron's unsuccessful attempts to locate him and appellant's misrepresentations that he was Lawson when he used the card. While it is true that Chevron did issue the credit card, Chevron never intended to issue a credit card to a nonexistent person, and because the cardholder, Lawson, did not exist, the credit card falsely purported to be issued by Chevron to Lawson. Appellant's second and third grounds for review are overruled.

In his first ground for review, appellant contends the court of appeals erred in holding the trial court properly overruled his motion to quash the indictment for failure to define the term "fictitious credit card." Appellant argues that absent a definition of fictitious credit card, he lacked sufficient notice as to the offense charged.

■ An exception to the form of an indictment exists if the indictment fails to provide adequate facts to give the defendant notice of the offense he is charged with. *See Adams v. State*, 707 S.W.2d 900, 901 (Tex. Crim.App.1986) (citing *American Plant Food Corp. v. State*, 508 S.W.2d 598 (Tex.Crim. App.1974)); *see also* TEX.CODE CRIM.PROC. ANN. arts. 21.02(7) & 27.09(2). However, a defect of form does not render an indictment insufficient unless the form defect "prejudice[s] the substantial rights of the defendant." TEX.CODE CRIM.PROC.ANN. art. 21.19.

The important question is whether a defendant had notice adequate to prepare his defense. The first step in answering this question is to decide whether the charging instrument failed to convey some requisite item of "notice." If sufficient notice is given, this ends our inquiry. If not, the next step is to decide whether, in the con-

---

3. In Texas, "[a] person commits an offense if he intentionally or knowingly makes a materially false or misleading written statement to obtain property or credit for himself or another." TEX.PENAL CODE ANN. § 32.32(b). Interestingly, the use of a credit card obtained in violation of section 32.32 is not an offense under section 32.31(b) although the latter section specifically sets forth twelve different ways to commit credit card abuse. Thus, a fictitious credit card under section 32.31(b)(2) is *not* a credit card issued by the purported owner to an existing person based upon false information on a credit application.

text of the case, this had an impact on the defendant's ability to prepare a defense, and finally, how great an impact.

*Adams,* 707 S.W.2d at 903.

■■■ Generally, an indictment which tracks the statutory language will survive a motion to quash, and when a term is defined by statute, it need not also be defined in the indictment. *DeVaughn v. State,* 749 S.W.2d 62, 69 (Tex.Crim.App.1988); *see Ex parte Porter,* 827 S.W.2d 324, 327 (Tex.Crim.App. 1992) (op. on reh'g). However, if "the statutory language is not completely descriptive of the offense, then additional specificity will be required in the face of a timely motion to quash." *DeVaughn,* 749 S.W.2d at 69. The legislature has not defined the term "fictitious credit card," and given our holding today that there are two ways for a credit card to be "fictitious" under section 32.-31(b)(2), a trial court should grant a motion to quash an indictment that fails to adequately notify the defendant of the manner in which the credit card is fictitious.

■■■ In the instant case, the indictment charged that appellant used a fictitious credit card "knowing that the credit card falsely purported to be issued by CHEVRON to WALE R. LAWSON." The indictment seems to define the fictitious credit card used in this case as a credit card that was not issued by the owner (i.e., falsely purporting to be issued by Chevron). However, the indictment could arguably be construed as defining the fictitious credit card as a credit card issued to a nonexistent cardholder (i.e., falsely purporting to be issued to Lawson).[4] Consequently, the language in this indictment is ambiguous and does not afford appellant sufficient notice of the meaning of ficti-

tious credit card. *See* TEX.CODE CRIM.PROC. ANN. art. 21.02(7) (the indictment must set forth the offense in "plain and intelligible words"). We hold that the trial court should have granted appellant's motion to quash the indictment, and the Court of Appeals erred in holding that the trial court properly denied the motion.[5]

After determining that the indictment in *DeVaughn* failed to provide adequate notice, this Court remanded that case to the court of appeals to determine, under *Adams,* whether the error impacted appellant's ability to prepare a defense, and if so, to what extent. *DeVaughn,* 749 S.W.2d at 71; *see also Geter v. State,* 779 S.W.2d 403, 407 (Tex.Crim.App. 1989). We will do the same. Appellant's first ground for review is sustained.

Accordingly, the judgment of the Court of Appeals is VACATED and this cause is REMANDED to that court for further proceedings consistent with this opinion.

McCORMICK, P.J., concurs in the disposition of grounds 2 and 3 and dissents to the disposition of ground 1.

CLINTON, J. concurs.

MEYERS, J., not participating.

---

4. Presumably, the State intended this indictment to allege that appellant used a fictitious credit card knowing that it was issued to a nonexistent cardholder, Lawson. Even if the indictment had alleged only that the Chevron credit card was a fictitious credit card because it "falsely purported to be issued ... to WALE R. LAWSON," the indictment would not have provided adequate notice that the credit card at issue is fictitious because it has an actual owner but a nonexistent cardholder. At any rate, we agree with the court of appeals that the legislature should define the term "fictitious credit card." *Olurebi,* 818 S.W.2d at 855 n. 1.

5. The Court of Appeals relied upon *Moallen* in holding that the trial court properly denied appellant's motion to quash. The State also relies upon *Moallen.* In *Moallen,* the appellant argued that the indictment was fundamentally defective. Here, however, appellant argues that the trial court should have granted his motion to quash the indictment which is an entirely different issue from whether an indictment is fundamentally defective.