**Orlando DELEON II, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 08–02–00146–CR.

Court of Appeals of Texas, El Paso.

March 6, 2003.

Stuart E. Parker, Dallas, for appellant.

William T. Hill, Dist. Atty. of Dallas County, Dallas, for state.

Before Panel No. 1, LARSEN, McCLURE, and CHEW, JJ.

## *OPINION*

ANN CRAWFORD McCLURE, Justice.

Orlando Deleon II appeals his conviction for possession of a fictitious driver's license. Appellant waived his right to a jury trial and entered a plea of not guilty before the trial court. The court found Appellant guilty and assessed his punishment at confinement for ninety days and a fine of $400, but suspended the sentence and placed Appellant on community supervision for one year. We affirm.

## FACTUAL SUMMARY

Joseph Heitjan, a Sachse police officer, stopped Appellant's vehicle when he failed to signal a turn. Appellant identified himself as Orlando Deleon and produced a driver's license bearing that name. Utilizing the driver's license produced by Appellant, Heitjan ran a computer check for warrants and learned that Appellant had warrants for speeding tickets out of Garland, Texas. After confirming the warrants through the dispatcher, Heitjan arrested Appellant and transported him to the jail. During Heitjan's inventory of Appellant's property, Heitjan found a second driver's license in Appellant's wallet. It is a valid Texas driver's license with Appellant's picture on it but it bears the name Andrew Charles Johnson. It also shows an incorrect date of birth for Appellant, indicating that he was over twenty-one years of age when in fact he was only nineteen. When Heitjan found the second license, Appellant became, in his words, depressed. His shoulders sagged, his head dropped down to his chest, and he began to shake his head from side to side.

## LEGAL SUFFICIENCY

In his sole issue for review, Appellant challenges the legal sufficiency of the evidence to prove that he possessed a fictitious license. He argues that since the license was duly issued by the Department of Public Safety, it is not fictitious.

### *Standard of Review*

In reviewing the legal sufficiency of the evidence to support a criminal conviction, we must review all the evidence, both State and defense, in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560, 573 (1979); *Geesa v. State*, 820 S.W.2d 154, 159 (Tex.Crim.App.1991). This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789, 61 L.Ed.2d at 573. We do not resolve any conflict of fact or assign credibility to the witnesses, as it was the function of the trier of fact to do so. *See Adelman v. State*, 828 S.W.2d 418, 421 (Tex.Crim.App.1992); *Matson v. State*, 819 S.W.2d 839, 843 (Tex.Crim.App.1991). Instead, our duty is only to determine if both the explicit and implicit findings of the trier of fact are rational by viewing all of the evidence admitted at trial in a light most favorable to the verdict. *Adelman*, 828 S.W.2d at 422. In so doing, any inconsistencies in the evidence are resolved in favor of the verdict. *Matson*, 819 S.W.2d at 843. Further, the standard of review is

the same for both direct and circumstantial evidence cases. *Geesa,* 820 S.W.2d at 158.

### Elements of the Offense

Appellant was charged with possession of a fictitious license pursuant to Section 521.451 of the Texas Transportation Code. That section, entitled "General Violation," provides that, except as provided by Section 521.452, a person may not:

> (1) display, cause or permit to be displayed, or have in the person's possession a driver's license or certificate that the person knows is fictitious or has been altered ...

Tex.Transp.Code Ann. § 521.451(a)(1)(Vernon Supp.2003).[1] The information alleged that Appellant possessed a driver's license he knew was fictitious.[2]

### Definition of "Fictitious"

Noting that Section 521.451 does not define "fictitious," Appellant directs us to Section 521.453(a), entitled "Fictitious License or Certificate":

> Except as provided by Subsection (f), a person under the age of 21 years commits an offense if the person possesses, with the intent to represent that the person is 21 years of age or older, a document that is deceptively similar to a driver's license or a personal identification certificate unless the document displays the statement 'NOT A GOVERNMENT DOCUMENT' diagonally printed clearly and indelibly on both the front and back of the document in solid

red capital letters at least one-fourth inch in height.

Tex.Transp.Code Ann. § 521.453(a)(Vernon 1999). Appellant reasons that a fictitious license is limited to one which is deceptively similar to a driver's license. Since the licenses he possessed were both valid, he argues that the evidence is insufficient to show that he possessed a fictitious license. In essence, he contends that a license issued by the Texas Department of Public Safety which has not subsequently been altered can never be a fictitious license. We disagree with this overly restrictive reading of the statute.

■ The Code Construction Act provides that when a statute does not define a term it must be given its common meaning, except in the case of words and phrases that have acquired a technical or particular meaning. Tex.Gov't Code Ann. § 311.011 (Vernon 1998); *see Neumuller v. State,* 953 S.W.2d 502, 511 (Tex.App.-El Paso 1997, pet. ref'd). The Transportation Code does not define "fictitious." Section 521.453(a) simply describes one offense involving possession of a fictitious license. There is no indication that the Legislature intended to limit the term "fictitious" to only fake or phony licenses and thereby exclude a valid license containing false information. Consequently, the term "fictitious" as used in Section 521.451 must be given its plain meaning.

■ In construing the plain meaning of the language of a statute, courts may resort to the use of dictionary definitions.

---

1. Section 521.451 also makes it an offense to possess more than one currently valid driver's license, Tex.Transp.Code Ann. § 521.451(a)(4), to provide a false name, false address, or counterfeit document, or to knowingly make a false statement, conceal a material fact, or otherwise commit fraud in an application for an original, renewal, or duplicate driver's license, Tex.Transp.Code Ann. § 521.451(a)(5).

The State did not prosecute Appellant under any of these sections.

2. The information tracks the entire section verbatim except it is stated in the conjunctive. Since we hold that the State proved possession of a fictitious license, we do not consider sufficiency of the evidence to prove the other allegations.

*See Bingham v. State*, 913 S.W.2d 208, 209–10 (Tex.Crim.App.1995). Webster's New Collegiate Dictionary defines fictitious as "feigned; imaginary; not genuine." WEBSTER'S NEW COLLEGIATIATE DICTIONARY 308 (1961). Webster's notes that "fictitious" implies fabrication. *Id.*

We find some guidance in *Olurebi v. State*, 870 S.W.2d 58 (Tex.Crim.App.1994). There, Olurebi was charged with credit card abuse under Section 32.31(b)(2) of the Penal Code. That section provides that a person commits credit card abuse if with intent to obtain property or service, he uses a fictitious credit card or the pretended number or description of a fictitious credit card. *Id.* at 59. The evidence at trial showed that Chevron issued a credit card to Wale R. Lawson based upon information contained in a credit application. *Id.* The credit application stated that Lawson was a dentist who resided at a certain address in Houston. *Id.* Chevron instituted an investigation after Lawson failed to remit payment for purchases. *Id.* It discovered that Lawson did not reside at the address stated on the application, that the bank and credit card references were false, and that the social security number either did not exist or belonged to someone other than Lawson. *Id.* Lawson did not have a driver's license in Texas or any neighboring states and Harris County tax records did not contain Lawson's name. *Id.* A license plate number appearing on one of the credit card receipts was traced to Olurebi's car and the owner of a Chevron station where the card had been used several times identified Olurebi's photograph as the person known to him as Wale Lawson. *Id.* Olurebi testified that Wale Lawson was the name of a British friend with whom he had lived but who had since returned to London. *Id.* Lawson gave him permission to use the credit card. *Id.* The indictment alleged that Olurebi used a fictitious Chevron card knowing that it falsely purported to be issued to Lawson. *Id.* The jury found Olurebi guilty. *Id.* On appeal, Olurebi argued that the evidence failed to prove that the credit card was not in fact issued by Chevron to Lawson.

The court noted that the Legislature had not defined a "fictitious credit card." However, it had defined a "credit card" as:

[A]n identification card, plate, coupon, book, number, or any other device authorizing a designated person or bearer to obtain property or services on credit. The term includes the number or description of the device if the device itself is not produced at the time of ordering or obtaining the property or service.

TEX.PEN.CODE ANN. § 32.31(a)(2)(Vernon 2003). The cardholder is the person[3] named on the face of the credit card to whom or for whose benefit the credit card is issued. TEX.PEN.CODE ANN. § 32.31(a)(1). Given these definitions, a credit card authorizes someone who is alive to obtain property or services on credit. *Olurebi*, 870 S.W.2d at 61. A credit card issued to a nonexistent person is not really a credit card at all since it purports, falsely, to be issued to an existent person. *Id.* As such, it is a fictitious credit card. *Id.* The court determined that a fictitious credit card is either a credit card not issued by the purported owner or a credit card with an actual owner but issued to a nonexistent cardholder. *Id.*

■ Applying *Olurebi* to Section 421.451, we conclude that a driver's license which contains false information is a fictitious license. A driver's license is an au-

---

**3.** A person is an individual, corporation, or association. TEX.PEN.CODE ANN. § 1.07(a)(38). An individual is a human being who has been born and is alive. TEX.PEN.CODE ANN. § 1.07(a)(26).

thorization issued by the department for the operation of a motor vehicle. TEX. TRANSP.CODE ANN. § 521.001(a)(3). A license must include the full name, date of birth, and residence address of the holder. TEX.TRANSP.CODE ANN. § 521.121(a)(3). Under the reasoning of *Olurebi,* a driver's license issued to a nonexistent person is a fictitious license.

The second driver's license contained a picture of Appellant but listed a false name and date of birth. Accordingly, the license was issued to a non-existent person and as such was a fictitious license. We find the evidence legally sufficient to support Appellant's conviction. His sole point is overruled and the judgment of the trial court is affirmed.