

**In The**
**Court of Appeals**
**Sixth Appellate District of Texas at Texarkana**

_____

No. 06-07-00094-CR
_____

CURTIS MANTOOTH, JR., Appellant

V.

THE STATE OF TEXAS, Appellee

_____

On Appeal from the 6th Judicial District Court
Lamar County, Texas
Trial Court No. 21797

_____

Before Morriss, C.J., Carter and Moseley, JJ.
Opinion by Justice Carter

OPINION

Curtis Mantooth, Jr., appeals his conviction for failure to comply with sex-offender registration requirements. In 1991, Mantooth was convicted of attempted sexual assault of a child. As discussed below, Mantooth was subject to the lifetime duty to register under Article 62.101(a). *See* TEX. CODE CRIM. PROC. ANN. art. 62.101(a) (Vernon 2006). On or about September 18, 2006, Mantooth failed to report a change in employment within seven days and failed to report his change of residence within seven days.

The State originally indicted Mantooth under former Article 62.12(a),[1] the predecessor to Article 62.101(a). The original indictment, though, incorrectly alleged Mantooth had been convicted of indecency with a child in 1991. Immediately before voir dire, the State moved to amend the indictment to reflect Mantooth had been convicted of attempted sexual assault of a child. The defense did not object to the amendment, and the trial court granted the State's motion. The State amended the indictment by interlineation to reflect Mantooth had been convicted of attempted sexual assault of a child but, also, amended the indictment to allege a duty to register under Article 62.101(b) of the Texas Code of Criminal Procedure. *See* TEX. CODE CRIM. PROC. ANN. art. 62.101(b) (Vernon 2006).

---

[1]*See* Act of May 28, 2003, 78th Leg., R.S., ch. 374, § 14, 2003 Tex. Gen. Laws 1505, 1513–14, *amended and renumbered by* Act of May 24, 2005, 79th Leg., R.S., ch. 1008, § 1.01, 2005 Tex. Gen. Laws 3385, 3410.

2

At trial, the State presented evidence that Mantooth had been convicted of attempted sexual assault of a child and had failed to comply with the sex-offender registration requirements. Although it alleged in the indictment that Mantooth had a duty to register under Article 62.101(b) (ten-year registration requirement), the State proved that Mantooth had a duty to register under Article 62.101(a) (lifetime registration requirement). *See* TEX. CODE CRIM. PROC. ANN. art. 62.101(a), (b). The lifetime registration requirement is predicated on a conviction for a sexual offense, whereas the ten-year requirement in Article 62.101(b) is based on a juvenile crime that was certified for adult prosecution. The trial court instructed the jury based on Article 62.101(b) without objection ("and [his] duty to register expires under article 62.101(b)"). The jury found Mantooth guilty, and the trial court sentenced him to eight years' imprisonment.

Mantooth raises six issues on appeal. In his first two points of error, Mantooth argues the indictment was fundamentally defective. Mantooth's third and fourth points of error argue the evidence is legally and factually insufficient. In his fifth issue, Mantooth claims the trial court erred in convicting him of a third degree felony. In his last issue, Mantooth argues the sentence exceeds the applicable punishment range.

## I.      The Indictment Does Not Contain Fundamental Error

In Mantooth's first and second points of error, Mantooth claims the error in the indictment constitutes fundamental error because it failed to allege when Mantooth's duty to register expired under Article 62.101(b). Mantooth also alleges the indictment failed to allege he was under a duty

to register at the time of the offense. Historically, defects of substance were "fundamental" errors and could be challenged at any point in the proceedings. *See, e.g., Morris v. State*, 13 Tex. Ct. App. 65, 71 (1882); *see also Cook v. State*, 902 S.W.2d 471, 476 (Tex. Crim. App. 1995). In 1985, Texas voters approved an amendment to Section 12 of Article V of the Texas Constitution that the presentation of an indictment or information vests the trial court with jurisdiction over the case. *See* TEX. CONST. art. V, § 12; *see also Studer v. State*, 799 S.W.2d 263, 272 (Tex. Crim. App. 1990). A defendant now waives any defect of form or substance in an information if no objection is made before the date trial commences. *See* TEX. CODE CRIM. PROC. ANN. art. 1.14(b) (Vernon 2005).

We note an instrument which is not an indictment or information under Article V, Section 12 of the Texas Constitution fails to vest the trial court with jurisdiction and the issue can be raised for the first time on appeal. *See Duron v. State*, 956 S.W.2d 547, 555 (Tex. Crim. App. 1997) (Womack, J., concurring); *Cook*, 902 S.W.2d at 479–80; *see also Teal v. State*, 230 S.W.3d 172, 180 (Tex. Crim. App. 2007). The omission of an element of the offense, though, does not prevent the instrument from being an information. The Texas Court of Criminal Appeals held, in *Studer*, that "the language in Art. V, § 12, 'charging a person with the commission of an offense,' does not mean, . . . that each element of the offense must be alleged in order to have an indictment or information as contemplated by Art. V, § 12." *Studer*, 799 S.W.2d at 272. "[T]o comprise an [information] within the definition provided by the constitution, an instrument must charge: (1) a person; (2) with the commission of an offense." *Cook*, 902 S.W.2d at 477. "[A] written instrument is an indictment

or information under the Constitution if it accuses someone of a crime with enough clarity and specificity to identify the penal statute under which the State intends to prosecute, even if the instrument is otherwise defective." *Duron*, 956 S.W.2d at 550–51. Because the information is sufficient to identify the penal statute under which the State intends to prosecute, the error is not a "fundamental" error. Mantooth's first and second points of error are overruled.

## II.  The Evidence Is Legally and Factually Sufficient

Mantooth contends, in his third and fourth points of error, that the evidence is legally and factually insufficient. Before we begin our analysis, a brief overview of the relevant statutes is in order. A person commits the offense of failure to comply with registration requirements if the person "is required to register and fails to comply with any requirement" of Chapter 62. TEX. CODE CRIM. PROC. ANN. art. 62.102 (Vernon 2006).

There is no dispute concerning whether Mantooth failed to comply with the registration requirements of Chapter 62. Whether one is required to report for his or her lifetime or only for ten years, the reporting requirements during the relevant period are the same. A person fails to comply with registration requirements if he or she fails to give seven days' notice of intent to change addresses, fails to report a change of address within seven days, or fails to report a change in employment status within seven days. *See* TEX. CODE CRIM. PROC. ANN. arts. 62.055, 62.057(b), 62.102 (Vernon 2006). The State introduced evidence that Mantooth had failed to report a change in employment status within seven days, failed to give seven days' notice of his intent to change his

5

residence, and failed to report his change of residence within seven days. Mantooth does not challenge the proof of these facts. The dispute in this case is whether the State proved Mantooth had a duty to register under Article 62.101(b) as alleged.

A violation of Article 62.102 is a state jail felony if the person's duty to register expires under Article 62.101(b) or (c), but is a third degree felony if the person's duty to register expires under Article 62.101(a). Article 62.101(a) provides:

> Except as provided by Subsection (b) and Subchapter I, the duty to register for a person ends when the person dies if the person has a reportable conviction or adjudication, other than an adjudication of delinquent conduct, for:
>
> (1) a sexually violent offense . . . .

TEX. CODE CRIM. PROC. ANN. art. 62.101(a). A "sexually violent offense" includes sexual assault. TEX. CODE CRIM. PROC. ANN. art. 62.001(6)(A) (Vernon Supp. 2008). The sex-offender registration statute specifically includes attempted sexual offenses as "reportable convictions or adjudications." TEX. CODE CRIM. PROC. ANN. art. 62.001(5)(G) (Vernon Supp. 2008). Subchapter I concerns early termination of a person's obligation to register and is not relevant in this case. Article 62.101(b) provides as follows in its entirety:

> Except as provided by Subchapter I, the duty to register for a person otherwise subject to Subsection (a) ends on the 10th anniversary of the date on which the person is released from a penal institution or discharges community supervision or the court dismisses the criminal proceedings against the person and discharges the person, whichever date is later, if the person's duty to register is based on a conviction or an order of deferred adjudication in a cause that was transferred to a district court or criminal district court under Section 54.02, Family Code.

6

TEX. CODE CRIM. PROC. ANN. art. 62.101(b). Article 62.101(c) provides a "catch-all" provision that provides for reportable convictions or adjudications not described by subsection (a). TEX. CODE CRIM. PROC. ANN. art. 62.101(c) (Vernon 2006).

The amended indictment alleged that Mantooth had a duty to register under Article 62.101(b). In order to evaluate the sufficiency of the evidence, we must first determine whether the State's allegation that Mantooth had a duty to register under Article 62.101(b) must be included in the hypothetically correct jury charge.

### A. The Hypothetically Correct Jury Charge Must Include the Statutory Elements of the Offense and the Statutorily Alternative Manner and Means

The State incorrectly argues that we evaluate the sufficiency of the evidence by the charge submitted to the jury.[2] The Texas Court of Criminal Appeals has held that evidence sufficiency should be measured against a "hypothetically correct" jury charge. *See Gollihar v. State*, 46 S.W.3d 243, 253 (Tex. Crim. App. 2001); *Malik*, 953 S.W.2d at 240; *see also Wooley v. State*,

---

[2]The State cites *Fisher v. State*, 887 S.W.2d 49, 53 (Tex. Crim. App. 1994); *Smith v. State*, 135 S.W.3d 259, 261–62 (Tex. App.—Texarkana 2004, no pet.); *Ramos v. State*, No. 06-05-00103-CR, 2006 Tex. App. LEXIS 3750 (Tex. App.—Texarkana May 4, 2006, no pet.) (not designated for publication), for the proposition that the sufficiency of the evidence should be measured by the charge submitted to the jury. *Smith* does not support the State's argument. *See Smith*, 135 S.W.3d at 261. *Ramos*, 2006 Tex. App. LEXIS 3750, is an unpublished opinion and has no precedential value. TEX. R. APP. P. 47.7. In *Malik v. State*, the Texas Court of Criminal Appeals reviewed a line of cases requiring the sufficiency of the evidence to be measured by the jury charge, and specifically overruled those cases. 953 S.W.2d 234, 239–40 (Tex. Crim. App. 1997) ("No longer shall sufficiency of the evidence be measured by the jury charge actually given."). Instead, the Texas Court of Criminal Appeals announced that the test was based on the elements of the offense as defined by the hypothetically correct jury charge. *Id.* at 240.

No. PD-0861-07, 2008 Tex. Crim. App. LEXIS 762 (Tex. Crim. App. June 25, 2008) (clarifying factual sufficiency measured by hypothetically correct jury charge). *Malik* controls "*even in the absence of alleged jury charge error*." *Gollihar*, 46 S.W.3d at 255.

A "hypothetically correct" jury charge is "one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." *Malik*, 953 S.W.2d at 240. The "hypothetically correct" jury charge cannot "wholly re-write the indictment," but is not required to "track exactly all of the allegations in the indictment." *Gollihar*, 46 S.W.3d at 253. If the essential elements of the offense are modified by the indictment, the modification must be included. *Id.* at 254. The hypothetically correct charge "need not incorporate allegations that give rise to immaterial variances." *Gollihar*, 46 S.W.3d at 256.

In *Curry*, the Texas Court of Criminal Appeals held that the "'law' as 'authorized by the indictment' must be the statutory elements" of the offense charged "as modified by the charging instrument." *Curry v. State*, 30 S.W.3d 394, 404 (Tex. Crim. App. 2000). Because the phrase "by using and threatening to use deadly force namely, a firearm, on [the victim]" alleged a statutory alternative "manner or means," the court held the State was bound by the allegation in the indictment. *Id.* at 403–04. Judge Keller has succinctly summarized *Curry* as holding, "[w]hen a statute lists more than one method of committing an offense, and the indictment alleges some, but

not all, of the statutorily listed methods, the State is limited to the methods alleged." *Fuller v. State*, 73 S.W.3d 250, 255 (Tex. Crim. App. 2002) (Keller, P.J., concurring).

Stated succinctly, the hypothetically correct jury charge must include both 1) allegations that form an integral part of an essential element of the offense or allegations that are statutorily alternative manner and means, and 2) material variances. *See Gollihar*, 46 S.W.3d at 256. We will first examine whether the allegation that Mantooth had a duty to register under Article 62.101(b) was an integral part of an essential element of the offense and then examine whether the allegation was a material variance.

**B.      The Allegation that Mantooth Had a Duty Under Article 62.101(b) Is Not an Essential Element**

The next question before this Court is whether the applicable duty under Article 62.101 is an "integral part of an essential element" of the offense.[3] *See id*. at 254 (explaining *Curry*, 30 S.W.3d 394). Whether the various subsections of Article 62.101 form an integral part of an essential element of an offense appears to be an unsettled area of law.[4]

---

[3]There is no allegation that Article 62.101(b) is a statutorily alternative manner and means. The Texas Court of Criminal Appeals cautioned that "[n]ot every list of alternatives in a statute will constitute a 'manner or means' of committing the offense." *Curry*, 30 S.W.3d at 398. We do not believe the list of categories specifying the circumstances when one must report for life or only for ten years constitutes statutorily alternative manner and means.

[4]We note the Austin Court of Appeals, while discussing a different issue, has held the duty to register is an element of the offense. *Ballard v. State*, 149 S.W.3d 693, 699 (Tex. App.—Austin 2004, pet. ref'd). We are not aware of any other cases addressing whether Article 62.101(b) is an essential element of the offense of failure to register.

9

When determining whether *Apprendi*[5] applied to a predecessor to Article 62.101, the Texas Court of Criminal Appeals suggested in a footnote that the "much preferred procedure is to plead the specific subsection in the indictment." *Juarez v. State*, 198 S.W.3d 790, 792–93 n.7 (Tex. Crim. App. 2006) (concluding *Apprendi* did not apply). This statement implies that allegation of the subsection is not required. If it is the "much preferred" practice, it is not the *required* practice. Because essential elements of an offense must be alleged in the indictment, *Juarez* suggests the specific subsection under Article 62.101 is not an essential element of the offense.

Although merely persuasive authority, the form charge in the Texas Practice Series merely requires the reportable conviction to be included in the indictment; it does not require the indictment to specify which subsection applies to the offense. 7 McCormick, Blackwell & Blackwell, Texas Practice: Criminal Forms And Trial Manual § 42.12 (2005). A number of Texas cases indicate that indictments often fail to allege which subsection of Article 62.101 is applicable. *See Ramos v. State*, No. 13-05-00015-CR, 2006 Tex. App. LEXIS 4922 (Tex. App.—Corpus Christi June 8, 2006, pet. ref'd) (mem. op., not designated for publication) (indictment merely alleged reportable conviction for sexual assault and defendant committed offense "while being a person required to register"); *Basey v. State*, No. 01-03-01014-CR, 2005 Tex. App. LEXIS 1329 (Tex. App.—Houston [1st Dist.] Feb. 17, 2005, no pet.) (mem. op., not designated for publication) (indictment merely alleged reportable conviction and defendant committed offense "while being a

---

[5] *Apprendi v. New Jersey*, 530 U.S. 466 (2000).

person required to register"); *Milligan v. State*, No. 03-99-00191-CR, 2000 Tex. App. LEXIS 2560 (Tex. App.—Austin Apr. 20, 2000, pet. ref'd) (not designated for publication) (merely alleged reportable conviction). *But see Cantu v. State*, No. 02-05-00192-CR, 2006 Tex. App. LEXIS 1884 (Tex. App.—Fort Worth Mar. 9, 2006, no pet.) (mem. op., not designated for publication) (alleging both reportable conviction and subsection).

This Court, albeit in a different context, has stated the State is merely required to prove the defendant's "status as a person with a reportable conviction." *Moore v. State*, 38 S.W.3d 232, 235 (Tex. App.—Texarkana 2001, pet. ref'd). *Moore* involved whether the current version or the prior version of the sex-offender registration statute applied. *Id*. Extending the reasoning of *Moore*, the State was not required to allege which subsection applied because only the defendant's status as a sex offender is an element of the crime. The allegation of a reportable conviction would be sufficient to allege the defendant's status as a sex offender.

We conclude that the various subsections of Article 62.101 are not elements of the offense of failure to register. The notice of the reportable conviction provides sufficient notice to the accused. Any given reportable conviction gives rise to a duty under only one of the subsections of Article 62.101. Once the State alleges a reportable conviction, the determination of which subsection of Article 62.101 applies is purely a question of law. It is undisputed that Mantooth's previous conviction was for a sexual offense which occurred after he turned eighteen years old. Once the underlying reportable conviction is alleged, the duty to register can be determined as a

11

matter of law. The essential element of the offense is the defendant's "status as a sex offender" by virtue of a reportable conviction. As such, only the reportable conviction must be alleged in the indictment. The applicable subsection of Article 62.101 is not an integral part of an essential element of the offense.

### C.    The Variance Is Immaterial

Since we have concluded the allegation is not an integral part of an essential element, the next step is to determine whether the variance is material. A variance occurs when there is a discrepancy between the allegations in the charging instrument and the proof at trial. *In re S.C.*, 229 S.W.3d 837, 841 (Tex. App.—Texarkana 2007, pet. denied). "The widely-accepted rule, regardless of whether viewing variance as a sufficiency of the evidence problem or as a notice-related problem, is that a variance that is not prejudicial to a defendant's 'substantial rights' is immaterial." *Hart v. State*, 173 S.W.3d 131, 144 (Tex. App.—Texarkana 2005, no pet.) (quoting *Gollihar*, 46 S.W.3d at 247–48; and referencing *Rojas v. State*, 986 S.W.2d 241, 246 (Tex. Crim. App. 1998)). When determining whether a defendant's "substantial rights" have been prejudiced, we must consider two questions: 1) whether the indictment, as written, informed the defendant of the charge against him or her sufficiently to allow such defendant to prepare an adequate defense at trial, and 2) whether prosecution under the deficiently drafted indictment would subject the defendant to the risk of being prosecuted later for the same crime. *See S.C.*, 229 S.W.3d at 841; *Brown v. State*, 159 S.W.3d 703, 709 (Tex. App.—Texarkana 2004, pet. ref'd).

Although the State alleged a duty to register under Article 62.101(b) (ten-year reporting requirement), the evidence established Mantooth had a duty to register as a sex offender under Article 62.101(a) (lifetime reporting requirement). Thus, there is a variance between the indictment and the evidence at trial. However, there is no evidence that the variance failed to permit Mantooth to prepare an adequate defense at trial. It is uncontested that no one noticed the State alleged the wrong subsection until the punishment portion of the trial. Mantooth prepared for trial with the understanding he was being charged with violating a lifetime duty to register. Further, the enhancement paragraph in the indictment alleged that Mantooth had previously been convicted for violating his lifetime duty to register. Nor is there any risk that Mantooth would be subjected to the risk of being prosecuted a second time for the same crime. The variance is immaterial and, therefore, does not need to be included in the hypothetically correct jury charge.

### D.     The Evidence Is Legally and Factually Sufficient

Because the hypothetically correct jury charge does not have to contain the State's allegation that Mantooth had a duty to register under Article 62.101(b), the evidence is legally and factually sufficient. The hypothetically correct jury charge would only require the jury to find that Mantooth had the reportable conviction alleged by the State.

In reviewing the legal sufficiency of the evidence, we view all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Johnson v. State*, 23 S.W.3d 1, 7 (Tex.

Crim. App. 2000). In a factual sufficiency review, we review all the evidence, but do so in a neutral light and determine whether the evidence supporting the verdict is so weak or is so outweighed by the great weight and preponderance of the evidence that the jury's verdict is clearly wrong or manifestly unjust. *Lancon v. State*, 253 S.W.3d 699, 705 (Tex. Crim. App. 2008).

The State proved the reportable conviction alleged and proved Mantooth's failure to notify the State of his changed residence and changed employment status. The State introduced a copy of the judgment finding Mantooth guilty of attempted sexual assault of a child as alleged in the indictment. Mantooth testified he was the person "that was convicted of attempted sexual assault of a child back in 1991." When last released from prison, Mantooth listed his address as 154 South First Street, Deport, Texas. Mantooth informed the police that he was working as a self-employed mechanic out of his house. Deputy Travis Rhodes, a deputy with the Lamar County Sheriff's Office, testified he informed Mantooth of his duty to report a change of residence and employment. A copy of Mantooth's pre-release notification form explaining his duty to register was introduced into evidence.

After receiving information that Mantooth may have changed his residence, Rhodes visited 154 South First Street and discovered there was no electricity and the telephone service had been disconnected. The refrigerator door was standing open, and the house was "[p]retty much an empty house." Several partially filled boxes were in the house like someone was moving out. The grass was high, and there were no vehicles around the house that would be consistent with Mantooth

running a mechanic business from the home. Rhodes discovered during his investigation that Mantooth had been working at the Blackland Prairie Gin for several weeks and had moved his shop to a building on Main Street several months earlier. Nancy Grissom, vice president and secretary of Blackland Prairie Gin, testified Mantooth had been employed by the company. Because the majority of Mantooth's possessions were located in a recreational vehicle parked at the shop building, Rhodes concluded Mantooth was living in the recreational vehicle. Photographs of both the 154 South First Street residence and the recreational vehicle were introduced into evidence. A rational juror could have concluded Mantooth was guilty beyond a reasonable doubt. The evidence is legally sufficient.

At trial, Mantooth testified his son was moving out of the house when Rhodes visited. According to Mantooth, he still lived at the house located at 154 South First Street and the personal items in the recreational vehicle were merely stored there. Mantooth admitted working at the gin and moving the shop. The jury was entitled to believe the State's version of events over Mantooth's testimony. The contrary evidence is not so strong that the jury's verdict is so against the great weight and preponderance of the evidence that it is clearly wrong or manifestly unjust. The evidence is factually sufficient.

The evidence is legally and factually sufficient to prove Mantooth committed the offense of failure to comply with sex-offender registration requirements. The reportable conviction created a

15

duty under Article 62.101(a) which made the offense a third degree felony. Because Mantooth was actually convicted under Article 62.101(a), Mantooth's remaining points of error are moot.[6]

## III.     Conclusion

Any error in the indictment is not fundamental error. Although the State alleged a duty to register under Article 62.101(b), the evidence established Mantooth had a duty to register as a sex offender under Article 62.101(a). The hypothetically correct jury charge was not required to contain the allegation that Mantooth had a duty under Article 62.101(b) since the allegation was not an integral part of an essential element or a material variance. The hypothetically correct jury charge was only required to contain the alleged reportable conviction. The State proved the reportable conviction it alleged and proved Mantooth's failure to report a change of residence and change of employment. As such, the State proved Mantooth committed a third degree felony when he failed to report his change of residence and change of employment. Because Mantooth was convicted of a third degree felony, Mantooth's fifth and sixth points of error are moot.

---

[6]Mantooth argues in his fifth point of error that the conviction under Article 62.101(b) was improperly enhanced to a third degree felony. In his last point of error, Mantooth argues the trial court erred in sentencing him to eight years for a state jail felony. Because Mantooth was convicted of violating a lifetime duty—a third degree felony—Mantooth's remaining arguments are moot. Mantooth was convicted of a third degree felony, and an eight-year sentence is within the statutory range for a third degree felony.

For the reasons stated, we affirm the judgment of the trial court.


Jack Carter
Justice

Date Submitted:     August 13, 2008
Date Decided:       September 30, 2008

Publish

17