In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-08-00039-CR


______________________________




MICHAEL DEAN PERRY, Appellant



V.



THE STATE OF TEXAS, Appellee




 


On Appeal from the 188th Judicial District Court


Gregg County, Texas


Trial Court No. 36182-A




 




Before Morriss, C.J., Carter and Moseley, JJ.


Memorandum Opinion by Justice Carter



MEMORANDUM OPINION



 Michael Dean Perry appeals his conviction of tampering with physical evidence. A jury
found Perry guilty and assessed a sentence of twenty-five years; the trial court sentenced Perry
accordingly. After reviewing the record, applicable law, and hearing oral argument, we affirm
Perry's conviction. Specifically, we find that the trial court did not err in overruling Perry's motion
to suppress evidence and that the evidence was legally and factually sufficient to support the jury's
finding of Perry's guilt. We further find the State failed to prove that one of the enhancement
allegations was a final conviction; therefore, we remand this case for a new punishment hearing. Our
resolution of that point obviates any need to examine Perry's claim of ineffective assistance of
counsel. 

I. Factual Background

 In August 2007, Longview police officer Lisa Chatterton responded to a call in a residential
area; the caller reported a suspicious person. When Chatterton arrived, she found a woman holding
a plastic table to keep Perry at bay. The woman also had a cordless telephone. Perry's clothing
matched that of the suspicious person report. Chatterton separated the two. As the woman retired
to her porch, she told Chatterton that Perry had "a dagger." Perry was found to have two knives on
his person and two prescription pill bottles; both bottles had pills, and neither had Perry's name on
the prescription. One of the pill bottle's contents was chemically analyzed and found to be a
dangerous drug: Clonazepam. After talking to the woman with the plastic table, Chatterton arrested
Perry for aggravated assault. At the station, as Chatterton was booking him in, Perry leapt to his feet,
reached across the table, grabbed one pill bottle, and consumed its contents. He was transported to
a local hospital. He was later charged with and convicted of tampering with evidence. This appeal
followed. 

II. Motion to Suppress

 Perry's first point of error complains of the trial court's failure to sustain his motion to
suppress. Perry claims the arresting officer did not have a legal basis to arrest him, and, therefore,
the arrest was illegal and any evidence obtained must be suppressed. 

 A. Review of a Motion to Suppress

 The standard for reviewing a trial court's ruling on a motion to suppress evidence is abuse
of discretion. Long v. State, 823 S.W.2d 259, 277 (Tex. Crim. App. 1991). At a hearing on a motion
to suppress, the trial court is the sole trier of fact and judge of the credibility of the witnesses as well
as the weight to be given their testimony. Romero v. State, 800 S.W.2d 539, 543 (Tex. Crim. App.
1990); Brooks v. State, 830 S.W.2d 817, 820 (Tex. App.--Houston [1st Dist.] 1992, no pet.). On
appellate review, the evidence presented at the suppression hearing is viewed in the light most
favorable to the trial court's ruling to determine whether the trial court abused its discretion in
denying the motion to suppress. Whitten v. State, 828 S.W.2d 817, 820 (Tex. App.--Houston [1st
Dist.] 1992, pet. ref'd).

 There are three distinct categories of interactions between police officers and citizens: 
encounters, investigative detentions, and arrests. State v. Perez, 85 S.W.3d 817, 819 (Tex. Crim.
App. 2002). Encounters occur when police officers approach an individual in public to ask
questions. Harper v. State, 217 S.W.3d 672, 674 (Tex. App.--Amarillo 2007, no pet.). Encounters
do not require any justification on the part of an officer. Id. Police officers "do not violate the
Fourth Amendment by merely approaching an individual on the street or in another public place, by
asking him if he is willing to answer some questions, by putting questions to him if the person is
willing to listen, or by offering in evidence in a criminal prosecution his voluntary answers to such
questions." Perez, 85 S.W.3d at 819.

 An officer may briefly stop a suspicious individual in order to determine his or her identity
or to maintain the status quo momentarily while obtaining more information. Adams v. Williams,
407 U.S. 143, 147 (1972); Terry v. Ohio, 392 U.S. 1, 21 (1968); Gurrola v. State, 877 S.W.2d 300,
302 (Tex. Crim. App. 1994). A police officer may lawfully conduct a temporary detention if there
is reasonable suspicion to believe that the detained person is violating the law. Reasonable suspicion
exists if the officer has specific, articulable facts that, when combined with rational inferences from
those facts, would lead the officer to reasonably suspect that a particular person has, or soon will be,
engaged in criminal activity. In making this determination, we consider the totality of the
circumstances. Neal v. State, 256 S.W.3d 264, 280 (Tex. Crim. App. 2008).

 An officer may arrest a suspect, without a warrant, if, "at the moment the arrest is made, the
facts and circumstances within the arresting officer's knowledge and of which he has reasonably
trustworthy information are sufficient to warrant a prudent man in believing that the person arrested
had committed or was committing an offense." See Amador v. State, No. PD-0144-08, 2009 Tex.
Crim. App. LEXIS 4, at *13-14 (Tex. Crim. App. Jan. 14, 2009) (i.e., probable cause) (citing Beck
v. Ohio, 379 U.S. 89, 91 (1964)). "The test for probable cause is an objective one, unrelated to the
subjective beliefs of the arresting officer, and it requires a consideration of the totality of the
circumstances facing the arresting officer." A finding of probable cause requires "more than bare
suspicion" but "less than . . . would justify . . . conviction." Id. at *14 (citations omitted). 

 B. Perry's Arrest 

 The State presented Chatterton's testimony, and at the suppression hearing, Perry introduced
her police offense report for the incident. According to Chatterton's report, before she arrived at the
scene, the "callsheet" was updated that the male subject had threatened a person and pulled a knife. 
Chatterton responded to a report of a suspicious person wearing a blue T-shirt and denim cut-offs. 
When Chatterton arrived at the reported location, she found a man matching that description engaged
in an argument with a woman who was holding a plastic table and a cordless telephone. From the
woman's posture and actions, Chatterton believed she was trying to keep the man at bay. Chatterton
told the woman to return to her house so she could talk to the man, later identified as Perry, and
determine what was happening. As she left, the woman told Chatterton that Perry had "a dagger." 
Chatterton said she recognized Perry's name and made small talk with him, waiting for a backup
officer to arrive. When another officer arrived, Chatterton asked Perry if he had a knife; he answered
in the affirmative, and Chatterton told him to place it on the hood of her squad car. When asked if
he had any other weapons, Perry produced a second knife; he also put a prescription pill bottle (1) on
the hood of the car, along with the two knives. At this point, Chatterton said she told Perry he was
being detained while she conducted her investigation. She handcuffed him and put him in the
backseat of her squad car. At the time Perry was detained, Chatterton had information that a male
matching his description had threatened the complainant and that Perry had two knives on his person. 
These were sufficient facts for Chatterton to reasonably suspect that Perry had engaged in criminal
activity. 

 Chatterton then again spoke to the woman at the scene. She told Chatterton she had seen
Perry walking in the neighborhood with a man the woman knew. That man left, and Perry continued
to walk back and forth in front of the woman's house; he asked the woman where the other man had
gone. The woman told Chatterton that she had told Perry he needed to leave; Perry then wielded a
knife in what the woman called a "posting position." At that point, the woman told Chatterton, she
picked up a plastic table and left the porch because Perry was entering her yard. The woman
described the knife as having "little groove marks," or "serrated," and one of the knives found on
Perry was serrated. Chatterton testified that, at that point, she decided to arrest Perry for aggravated
assault based on his alleged threat to the female.

 Chatterton's report further stated that the female had told Chatterton that Perry had threatened
her, so she picked up a plastic table and told Perry not to come into her yard. At that time, Perry
exhibited a knife and "posted it" in a stabbing position and told her,"I'm going to cut you bitch." 
Based on the totality of the information known to Chatterton at the time of the arrest, we find the
facts and circumstances within her knowledge and of which she had reasonably trustworthy
information were sufficient to warrant a prudent person's belief that Perry had committed an offense. 
The trial court did not err in denying the motion to suppress. 

III. Points Two and Three: Sufficiency of the Evidence

 Perry next challenges the legal and factual sufficiency of the evidence to support his
conviction. 

 A. Standard of Review 

 The standard for reviewing a legal sufficiency challenge is whether any rational trier of fact
could have found the essential elements of the offense beyond a reasonable doubt. Jackson v.
Virginia, 443 U.S. 307, 320 (1979); Johnson v. State, 871 S.W.2d 183, 186 (Tex. Crim. App. 1993).
In examining evidentiary sufficiency, we examine the evidence in the light most favorable to the
verdict. Jackson, 443 U.S. at 320; Johnson, 871 S.W.2d at 186. Evidentiary sufficiency is measured
"by the elements of the offense as defined by the hypothetically correct jury charge for the case."
Malik v. State, 953 S.W.2d 234, 239-40 (Tex. Crim. App. 1997). The hypothetically correct jury
charge "sets out the law, is authorized by the indictment, does not unnecessarily increase the State's
burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the
particular offense for which the defendant was tried." Id. at 240.

 In contrast to a legal sufficiency review, in a factual sufficiency review, we review all the
evidence, but do so in a neutral light and determine whether the evidence supporting the verdict is
so weak or is so outweighed by the great weight and preponderance of the evidence that the jury's
verdict is clearly wrong or manifestly unjust. Lancon v. State, 253 S.W.3d 699, 705 (Tex. Crim.
App. 2008). The Malik doctrine of applying a hypothetically correct jury charge applies to a review
of factual sufficiency. Wooley v. State, 273 S.W.3d 260, 268 (Tex. Crim. App. 2008). 

 B. Hypothetically Correct Jury Charge Analysis 

 Perry's appellate complaint is that the State did not offer sufficient evidence to prove the
substance Perry consumed was actually Seroquel; and because the State's indictment alleged that the
evidence he concealed or destroyed was Seroquel, there was legally and factually insufficient
evidence to support the conviction. The State's indictment charged Perry did 

 knowing an offense had been committed, to-wit: possess a dangerous drug,
intentionally or knowingly destroy and conceal a dangerous drug, to-wit: Seroquel,
with intent to impair its verity as evidence in any subsequent investigation or official
proceeding related to the offense.

 

 

 Based on the Texas Penal Code, (2) the State needed to prove Perry: 1) had knowledge some
offense had been committed; 2) altered/destroyed/concealed a thing (document or record are not
alleged and are not applicable); 3) with intent to impair that thing's verity as evidence in an
investigation related to the offense. See Tex. Penal Code Ann. § 37.09 (Vernon Supp. 2008). 
Perry claims that, since the State pled what specific piece of evidence had been destroyed or
concealed, it had to prove what Perry concealed or destroyed was a dangerous drug; specifically, that
it was Seroquel. (3)

 We disagree. The hypothetically correct jury charge in this case would have charged the jury
with finding whether Perry committed the above-enumerated elements. In Mantooth v. State, 269
S.W.3d 68 (Tex. App.--Texarkana 2008, no pet.), we analyzed the "hypothetically correct jury
charge" when reviewing the sufficiency of the evidence:

 A "hypothetically correct" jury charge is "one that accurately sets out the law, is
authorized by the indictment, does not unnecessarily increase the State's burden of
proof or unnecessarily restrict the State's theories of liability, and adequately
describes the particular offense for which the defendant was tried." Malik, 953
S.W.2d at 240. The "hypothetically correct" jury charge cannot "wholly re-write the
indictment," but is not required to "track exactly all of the allegations in the
indictment." Gollihar, 46 S.W.3d 243, 253 (Tex. Crim. App. 2001). If the essential
elements of the offense are modified by the indictment, the modification must be
included. Id. at 254. The hypothetically correct charge "need not incorporate
allegations that give rise to immaterial variances." Gollihar, 46 S.W.3d at 256.

 In Curry, the Texas Court of Criminal Appeals held that the "'law' as 'authorized by
the indictment' must be the statutory elements" of the offense charged "as modified
by the charging instrument." Curry v. State, 30 S.W.3d 394, 404 (Tex. Crim. App.
2000). Because the phrase "by using and threatening to use deadly force namely, a
firearm, on [the victim]" alleged a statutory alternative "manner or means," the court
held the State was bound by the allegation in the indictment. Id. at 403-04. Judge
Keller has succinctly summarized Curry as holding, "[w]hen a statute lists more than
one method of committing an offense, and the indictment alleges some, but not all,
of the statutorily listed methods, the State is limited to the methods alleged." Fuller
v. State, 73 S.W.3d 250, 255 (Tex. Crim. App. 2002) (Keller, P.J., concurring).

 Stated succinctly, the hypothetically correct jury charge must include both
1) allegations that form an integral part of an essential element of the offense or
allegations that are statutorily alternative manner and means, and 2) material
variances. (4) See Gollihar, 46 S.W.3d at 256. 


Mantooth, 269 S.W.3d at 74 (in Mantooth, we went on to hold that the hypothetically correct jury
charge [defendant charged with failure to register as a sex offender; State cited incorrect statute
subsection in alleging registration requirement] did not "have to contain the State's allegation that
Mantooth had a duty to register under" the wrong subsection, that was listed in the indictment). 



 1. Essential elements of the offense 

 Here, the first element of the statute mandates the State prove that the defendant's actions
were taken "knowing that an offense has been committed." Tex. Penal Code Ann. § 37.09(d)(1). 
Specifically, it was alleged that Perry knew that he possessed a dangerous drug. One definition of
"dangerous drug" is a drug that is required to be dispensed by prescription. Tex. Health & Safety
Code Ann. § 483.001(2)(A) (Vernon Supp. 2008). The possession of a dangerous drug violates the
law  unless  "the  person  obtains  the  drug  from  a  pharmacist."  Tex.  Health  &  Safety  Code
Ann. § 483.041(a) (Vernon Supp. 2008).

 The evidence showed that Chatterton had just finished speaking on the telephone to a
narcotics officer about charging Perry with possession of dangerous drugs, in front of Perry, when
he grabbed one of the bottles and consumed its contents. It is undisputed that Perry possessed two
pill bottles dispensed by a pharmacist, neither of which were prescribed for him. The contents of
one was examined by the laboratory chemist and found to contain a dangerous drug: Clonazepam. 
The bottles revealed that both drugs were prescribed for a Roni McKinney, not Perry. The evidence
fully supports the jury's finding that Perry knew the offense of possession of a dangerous drug had
been committed when he consumed the pills. 

 The third element that the State was required to prove was that Perry had the intent to impair
its verity as evidence. Perry ate the contents of the second pill bottle; the evidence supports the jury's
finding of his intent to impair the use of the items in the bottle in a later investigation or proceeding
related to his possession of a dangerous drug.

 It is the second element of the statute that Perry argues has not been fulfilled. The second
element requires the State to prove Perry destroyed or concealed a "thing with intent to impair its
verity as evidence." In the indictment, the State described the item destroyed as "a dangerous drug,
to wit: Seroquel." This case revolves around whether the State was required to prove that the drug
destroyed was specifically Seroquel using the "hypothetically correct jury charge" test. 

 In former days, the reference to a "dangerous drug, to-wit: Seroquel" may have been
considered as surplusage which the State was not required to prove, but now the surplusage doctrine
has been subsumed in the hypothetically correct jury charge analysis. See Gollihar, 46 S.W.3d at
256; Fuller v. State, 73 S.W.3d 250, 255 (Tex. Crim. App. 2002). Perry was charged with tampering
with or fabricating physical evidence, not a drug violation. Therefore, the State was required to
prove that, under these circumstances, Perry destroyed a thing with intent to impair its verity as
evidence in any subsequent investigation or official proceeding related to the offense. Tex. Penal
Code Ann. § 37.09(d)(2). The evidence showed that, while Perry was being processed in the police
department, the two pill bottles taken from his possession were nearby when he consumed the
contents of one of them. It takes no leap of deductive reasoning for a reasonable jury to conclude
Perry was attempting to destroy whatever was in the pill bottle so that the evidence would not be
available for use in the drug possession case. Whether the bottle actually contained Seroquel, Xanax,
or little liver pills is not an integral part of an essential element of the crime; concealing evidence
intending to impair its use is the crime. The criminal act alleged here was to deprive the authorities
of an investigative tool. At the time Perry swallowed the pills, no one knew with certainty the
chemical composition of the pills, and it was necessary to take them into custody for analysis. Later
chemical analysis revealed the other bottle did contain exactly what the prescription label stated: 
a dangerous drug, Clonazepam. So, the State at least presented evidence that the jury could believe
that Perry knew he had possessed a dangerous drug, Clonazepam, at the time he consumed the
contents of the other bottle. Further, the jury could believe that, by eating the pills, Perry was
destroying or concealing the things in the bottle with intent to impair their later use. Whether the
contents, after chemical analysis, turned out to be Seroquel or any other drug, is not the relevant
issue. 

 Seroquel was simply the instrumentality used in the commission of the offense, and that is
not an element of the crime. See Flenteroy v. State, 187 S.W.3d 406 , 411 (Tex. Crim. App. 2005)
(appellant's defense did not depend on whether any particular type of weapon was used; variance
between indictment's allegation of "screwdriver" and State's proof at trial of "hard metal-like object"
was, therefore, immaterial); see also Gharbi v. State, 131 S.W.3d 481, 483 (Tex. Crim. App. 2003)
(allegation that victim was "a protected person" not statutory element or "an integral part of an
essential element of the offense" and need not be included in hypothetically correct jury charge);
Fuller, 73 S.W.3d at 252 (allegation which is not statutory element [name of victim] need not be
included in hypothetically correct jury charge; additionally, proof that victim was "Mr. Fuller" or
"Buddy" not material variance from indictment's allegation that victim was "Oren M. Fuller" in
injury to elderly individual case). Further, when one knows an offense has been committed, the
allegation in this indictment is not a statutory alternative manner and means of committing this
crime. See Curry v. State, 30 S.W.3d 394, 403-04 (Tex. Crim. App. 2000). 

 Rather than, as argued by Perry, proving that he concealed or destroyed Seroquel, the State
had to prove he concealed or destroyed something germane to the officer's investigation into Perry's
alleged offense of possession of dangerous drugs. The contents of the pill bottle were not as
important as the fact that the bottle and any contents were evidence. Chatterton estimated there were
"15 - 20" pills in the bottle before Perry consumed them. Having found that proof of the specific
drug was not an integral part of an element of the crime, we next consider whether there is a material
variance between the indictment and the State's proof. 

 2. Variance 

 A variance occurs when there is a discrepancy between the allegations in the charging
instrument and the proof at trial. Gollihar, 46 S.W.3d at 246. "The widely-accepted rule, regardless
of whether viewing variance as a sufficiency of the evidence problem or as a notice-related problem,
is that a variance that is not prejudicial to a defendant's 'substantial rights' is immaterial." Id. at
246-47. In determining if the defendant's substantial rights have been prejudiced, we must consider
two questions: (1) whether the indictment, as written, informed the defendant of the charge against
him or her sufficiently to allow the defendant to prepare an adequate defense at trial, and (2) whether
prosecution under the deficiently drafted indictment would subject the defendant to the risk of being
prosecuted later for the same crime. See In re S.C., 229 S.W.3d 837, 841 (Tex. App.--Texarkana
2007, pet. denied); Brown v. State, 159 S.W.3d 703, 709 (Tex. App.--Texarkana 2004, pet. ref'd). 
 This indictment gave Perry ample notice that the State intended to prove he destroyed
evidence related to the offense. More specifically, the indictment indicated the specific thing he
concealed was a dangerous drug. This information gave Perry copious notice so that he could
prepare a defense at trial. The State actually provided evidence that, while Perry was being
processed for a drug possession charge at the police station, he consumed the contents of a bottle
which had been on his person and which was prescribed for someone else. The bottle was labeled
that it contained the drug Seroquel; after consuming the contents, Perry was lethargic as occurs when
one has ingested large quantities of Seroquel. While the State did not present scientific evidence of
an analysis of the item consumed, it gave Perry proper notice that he was charged with tampering
with evidence in a specific fashion. The criticism of this indictment was that it over-described the
conduct of Perry that constituted tampering with evidence. The fact that the State gave a more
descriptive notice of what it intended to prove than was actually necessary to be placed in the
hypothetically correct jury charge does not render the notice improper. Further, we find there is no
risk that Perry could be prosecuted a second time for this same crime. Consequently, the variance
between the allegation that Perry concealed a dangerous drug, Seroquel, and the proof at trial is
immaterial and is not required to be included in the hypothetically correct jury charge. 

 We find the evidence legally and factually sufficient to support a jury's finding that Perry:
1) knew the offense of possession of dangerous drugs had been committed; 2) destroyed or concealed
a thing; 3) with intent to impair its verity or availability in any subsequent investigation related to
the offense. See Tex. Penal Code Ann. § 37.09. We overrule Perry's second and third points of
error.

IV. Nonfinal Felony Conviction Not Available for Enhancement (5)

 The State alleged Perry had been convicted of burglary of a vehicle on November 1, 1984,
and of delivery of marihuana on June 21, 1988. On appeal, Perry claims the first conviction, for
burglary of a vehicle, was for a probated sentence which was never revoked. The judgment in that
case reveals on its face that Perry was sentenced to three years' imprisonment, but that such sentence
was suspended and he was placed on probation (now community supervision). There is no evidence
that Perry's probated sentence was ever revoked. Therefore, claims Perry, the conviction was not
final for enhancement purposes, and the State should not have been allowed to rely on that
conviction. The State argues Perry waived any complaint by failing to object to the purported
enhancement conviction at trial.

 Where a defendant receives a probated sentence, and that probation is never revoked, the
conviction does not become final. A probated sentence is not a final conviction for enhancement
purposes unless it is revoked; a successfully served probation is not available for enhancement
purposes. Ex parte Langley, 833 S.W.2d 141, 143 (Tex. Crim. App. 1992). "In connection with
Section 12.42 of the Texas Penal Code enhancement provisions and their predecessors, we have held
uniformly that the prior convictions must be final convictions." Jordan v. State, 36 S.W.3d 871, 873
(Tex. Crim. App. 2001). In Perry's situation, this point is especially pertinent: The State used two
prior felony convictions to put Perry in the habitual offender penalty range, twenty-five years to life. 
He was sentenced to the lowest end of that range (twenty-five years). Because one prior was not
eligible to be used for enhancement, Perry should only have been subjected to a second degree felony
punishment range (tampering is a third degree felony; (6) one prior felony raises the level to a second
degree felony (7)).

 However, the State contends Perry has waived this complaint because he did not object on
this basis to the trial court. The finality of enhancement convictions is part of the State's burden of
proof: "in the absence of proof of an order revoking the petitioner's probation, there was no evidence
that the first prior felony conviction was a final conviction." Ex parte Murchison, 560 S.W.2d 654,
656 (Tex. Crim. App. 1978). Also, 

 The State still had the burden to make a prima facie showing that any prior
conviction alleged for enhancement became final before the commission of the
primary offense. . . . Only then would the burden shift to Berry to prove otherwise. 
. . . . Here, the evidence offered by the State clearly proved that the prior felony
conviction was not final before the commission of the primary offense. The State,
therefore, failed to meet its burden of proof. Because the State failed to make a
prima facie showing of finality, Berry had no burden to carry; nor was he obligated
to complain about or object to the lack of finality of the alleged prior conviction. The
State contends Berry waived any error on this issue by failing to object to the
enhancement paragraph before trial. While the enhancement paragraph in the
indictment may have been sufficient to charge the finality of the prior conviction, it
was not sufficient to prove the finality of that conviction.

 

Berry v. State, 179 S.W.3d 175, 177-78 (Tex. App.--Texarkana 2005, no pet.) (citations omitted). 
So it was not necessary for Perry to object at trial; this matter is properly before the Court. 

 Even though it was error to enhance Perry's primary offense with a prior conviction that was
not final at the time of the commission of that offense, any nonconstitutional error, defect,
irregularity, or variance that does not affect a substantial right must be disregarded. See Tex. R. App.
P. 44.2(b). We cannot disregard this error. As this was a second degree felony, Perry must have
been sentenced within a range of between two and twenty years' imprisonment. Instead, he was
sentenced to five years more than the maximum allowable. We sustain this point of error and
remand to the trial court for a new punishment hearing.

V. Ineffective Assistance of Counsel

 Perry's fifth point of error complains his trial counsel was constitutionally ineffective for
failing to discover that one of the State's enhancement allegations was a nonfinal conviction (see
discussion supra). This allegation affects only the punishment issue and, as we have ordered a new
punishment trial, we need not address this issue. 

 We affirm the judgment of guilt and remand the case to the trial court for a new punishment
trial. 




 Jack Carter

 Justice


Date Submitted: April 2, 2009 

Date Decided: April 29, 2009


Do Not Publish 

1. A second pill bottle was found on Perry in the jail when he was being booked in.
2. A person commits an offense if he or she "knowing that an offense has been committed,
alters, destroys, or conceals any record, document, or thing with intent to impair its verity, legibility,
or availability as evidence in any subsequent investigation of or official proceeding related to the
offense." Tex. Penal Code Ann. § 37.09(d) (Vernon Supp. 2008). Another method of committing
this offense is premised on the defendant "knowing that an investigation . . . is pending or in
progress." The State did not allege that manner of committing this offense. 
3. The jury, in deliberations, sent a note to the trial court asking, "If the presence of Serouqel
[sic] was not evident, would the charge of physical evidence tampering still be in effect according
to this indictment?" 
4. To determine whether a variance is material, we inquire if the indictment, as written,
informed the defendant of the charge against him or her sufficiently so the defendant could prepare
an adequate defense; and whether he or she would then be subject to being prosecuted again for the
same offense. See Gollihar, 46 S.W.3d at 257. 
5. The trial court's judgment says Perry pled "true" to the second enhancement allegation; this
is not correct. The record shows he pled "not true." 
6. Tex. Penal Code Ann. § 37.09(c).
7. Tex. Penal Code Ann. § 12.42(a)(3) (Vernon Supp. 2008).


a whole, as in Maxus,
or the issue of indemnity only, as in Chesapeake and Panatrol, we cannot say that Texas has a more
significant relationship than Louisiana to the issue of indemnity or the transaction of the parties. 
Thus, as the Maxus court concluded that, on balance, the factors required the application of Kansas
law, we likewise find that the factors require the application of Louisiana law to this case. If we
examine the indemnity issue separately, we conclude the parties selected Louisiana law to apply to
the indemnity issue for operations conducted in Louisiana. 

D. Does the Choice of Law Determination Apply to Cudd?

 There is one remaining issue. Sonat has argued in a reply brief that, should we reverse on
this basis in favor of Lumbermens, that cannot and should not inure to the benefit of Cudd because
Cudd agreed not to raise the choice-of-law issue on appeal. We disagree. 

 First: Cudd did not violate its agreement. Both in briefing and at oral argument, counsel
scrupulously avoided even the barest mention of the choice-of-law issue. That issue was raised
solely by Lumbermens.

 Second: Even though Sonat, relying on the Rule 11 agreement that Cudd would not assert
the choice-of-law issue, dismissed with prejudice its claims against Cudd for breach of contract
(failing to invoice Sonat for the insurance premium to become an additional insured on Cudd's
policy), the Texas Supreme Court specifically directed this Court to allow Lumbermens to contest
the choice-of-law ruling. The Texas Supreme Court found that this issue could be dispositive, which
we believe to be the case. Since the Texas Supreme Court authorized the presentation of this issue,
we must determine its merits and apply it to those bound by the judgment. 

 Third: The judgment is not against Lumbermens; it is against Cudd. Lumbermens was not
a party below and is not a party to the judgment. We cannot reverse the judgment without reversing
it as to the party against whom it was taken. Further, for us to render any sort of a judgment
expounding on the law without applying it to this case would fit squarely within the definition of an
advisory opinion. We are prohibited from issuing advisory opinions, the distinctive feature of which
is that it decides an abstract question of law without binding the parties. Tex. Const. art. II, § 1;
see Valley Baptist Med. Ctr. v. Gonzalez, 33 S.W.3d 821 (Tex. 2000). 

 We reverse the judgment and remand the cause to the trial court for further proceedings in
accordance with this opinion.



 Jack Carter

 Justice


Date Submitted: August 24, 2006

Date Decided: September 26, 2006

1. Sonat was the operator of a high-pressure gas well in Bryceland, Louisiana. Sonat hired
Cudd to work on the well. They entered into a contract under which they agreed to indemnify each
other and provide insurance for claims brought by their various employees. The well blew out. Four
Cudd workers were killed. A tort lawsuit was filed in Houston by several workers' families. Two
cases were also filed in Marshall. Sonat ultimately settled all of the tort claims--and then sought
indemnity from Cudd for the settlement amounts--the case before us. 
2. A related opinion is found at Brooks Well Servicing, Inc. v. Cudd Pressure Control, Inc., 850
So.2d 1027 (La. Ct. App. 2nd Cir. 2003).
3. When the parties have made a contractual choice of law, that choice will be given effect so
long as the contract bears a substantial relationship to the chosen state and so long as the parties'
choice does not thwart a fundamental policy of the state whose law would otherwise be applied. See
Desantis, 793 S.W.2d at 677 (adopting rule of Restatement (Second) of Conflict of Laws § 187
(1989), "Law of the State Chosen by the Parties").
4. As described by the Maxus opinion, the use of Kansas law might either void or limit the
obligation to indemnify, while the indemnity agreement was valid under Texas law.
5. The principles referred to are the generic choice of law principles set out for general use in
determining which jurisdiction's law applies. 
6. Sonat dismissed with prejudice its breach of contract claim based on this theory. Sonat
alleged Cudd failed to invoice it for the cost of the insurance to allow Sonat to be named as an
additional insured on its policy. The Texas Supreme Court cited the trial court's ruling that Sonat
was an additional insured under Cudd's policy with Lumbermens. Lumbermens Mut. Cas., 184
S.W.3d at 728 n.8. However, Lumbermens asserts Sonat did not pay the premium and was not an
additional insured. This issue is not before us.