

# In The
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

## No. 06-10-00075-CR

_____

ALEX RAY JOHNSON, Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 188th Judicial District Court
Gregg County, Texas
Trial Court No. 37,932-A

Before Morriss, C.J., Carter and Moseley, JJ.
Memorandum Opinion by Chief Justice Morriss

MEMORANDUM OPINION

In Linda Moore's ransacked duplex, from which several electronic items had been stolen, police found a single useable fingerprint on a CD case on the floor. That fingerprint was matched to Alex Ray Johnson, who was charged and convicted for the burglary.[1]

On appeal, Johnson argues that there is legally and factually insufficient evidence to support his conviction. We affirm the conviction because the fingerprint evidence is legally sufficient to support the conviction.

We do not address Johnson's challenge to the factual sufficiency of the evidence, because a plurality of the Texas Court of Criminal Appeals very recently abolished the separate factual sufficiency review of evidence. *See Brooks v. State*, No. PD-0210-09, 2010 WL 3894613, at \*\*1, 14 (Tex. Crim. App. Oct. 6, 2010) (Cochran, J., concurring, Womack, J., joining the concurrence) (4-1-4 decision).

Moore lived with her fiancée in a duplex in Gregg County, Texas. Every other weekend, her fiancée's two children stayed with them. Moore left for work around 7:15 a.m., Tuesday, January 29, 2008, and returned sometime between 12:00 noon and 1:00 p.m., to discover that the back door to the duplex had been kicked in and the door frame was damaged.[2] She testified that her living room was "rummaged through," that the drawers in both bedrooms were pulled out, that

---

[1] After a jury trial, Johnson was found guilty of burglary of a habitation, was sentenced to twenty years' imprisonment, and was fined $3,000.00.

[2] Moore's fiancée arrived at the duplex sometime after the police arrived. The record is unclear whether, on the day in question, Moore's fiancée left for work before or after Moore.

clothes were thrown on the floor, and that mattresses were "flipped up off the bed." A Playstation 2 video game console, twenty-five to thirty Playstation 2 video games, and a jar of change were missing.

Moore testified that the CDs in the home and the missing games were all bought new from places like GameStop, Wal-Mart, or Target. She did not buy used games because "you never know if they're going to work or if they're scratched." The games stayed at the residence because the children were not allowed to take them anywhere.

Officer Jerry Sullivan took photographs and swept the apartment for fingerprints. One identifiable fingerprint was lifted from a CD case found on the floor in the children's bedroom. Although there were fifteen to twenty smudged fingerprints found in the home and other fingerprints on the CD case, none of the other prints were usable because they were smudged. Sullivan testified that a fingerprint could last from hours to days.

Detective Dan Reigstad, a physical evidence detective that "process[ed] physical evidence" and performed "physical evidence comparisons," explained that, when comparing fingerprints, he examines the two prints until he is "100 percent sure that it is a match and there's no possible chance it could be anyone else." After a manual comparison, Reigstad determined that the fingerprint found on the CD case matched Johnson's fingerprints.

In reviewing the evidence for sufficiency, we consider the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the

essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318–19 (1979). In the *Brooks* plurality opinion, the Texas Court of Criminal Appeals found "no meaningful distinction between the *Jackson v. Virginia* legal-sufficiency standard and the *Clewis*[3] factual-sufficiency standard, and these two standards have become indistinguishable." *Brooks*, 2010 WL 3894613, at *8. Further, a proper application of the *Jackson* legal-sufficiency standard is as exacting a standard as any factual-sufficiency standard. *See id.* at *11. In a concurring opinion, Judge Cochran pointed out that the United States Supreme Court has rejected a legal sufficiency test that requires a finding that "no evidence" supports the verdict because it affords inadequate protection against potential misapplication of the "reasonable doubt" standard in criminal cases. *Id.* at *16 (Cochran, J., concurring). Rather than meeting a mere "no evidence" test, legal sufficiency is judged not by the quantity of evidence, but by the quality of the evidence and the level of certainty it engenders in the fact-finder's mind. *Id.* at *17.

Johnson was charged by indictment with burglary of a habitation; the specific charge was that with intent to commit theft, he entered a habitation, without the effective consent of the owner, Moore. Our review under the hypothetically correct jury charge must be guided by the requirements of the alleged statutory alternative. *See Fuller v. State*, 73 S.W.3d 250, 255 (Tex. Crim. App. 2002) (Keller, P.J., concurring); *Mantooth v. State*, 269 S.W.3d 68, 74 (Tex. App.—Texarkana 2008, no pet.). Here, a hypothetically correct charge would require the jury to find, beyond a reasonable doubt, that: (1) Johnson; (2) without the effective consent of the owner;

---

[3]*Clewis*, 922 S.W.2d 126.

(3) entered a habitation; (4) with intent to commit theft.[4]  TEX. PENAL CODE ANN. § 30.02(a)(1) (Vernon 2003).

In *Villarreal v. State*, a home's door had been forced open, two bedrooms had been ransacked, and checkbooks and cash were missing.  79 S.W.3d 806 (Tex. App.—Corpus Christi 2002, pet. ref'd).  The police found fingerprints on CD covers, a clock radio, a television, and a computer.  *Id.* at 810.  All of the CDs were purchased new and of the thirty-five to forty CDs kept in one of the bedrooms, only one or two of them had ever been loaned out, and that was to a close friend with an understanding that no one else was to use them.  *Id.*  The fingerprints were matched to Villarreal.  *Id.*  Neither of the two homeowners knew Villarreal and neither had given him permission to be in the residence that day.  *Id.*  Even though highly unlikely possibilities could account for the presence of the defendant's fingerprints in a manner consistent with innocence, the court of appeals found the evidence sufficient to uphold the burglary conviction because, "taken as a whole, the evidence tends to show that the fingerprints were necessarily made at the time of the burglary and negates the probability that they were made prior to the time of the burglary."  *Id.* at 812 (citing *Phelps v. State*, 594 S.W.2d 434, 436 (Tex. Crim. App. [Panel Op.] 1980)); *Neito v. State*, 767 S.W.2d 905, 908–09 (Tex. App.—Corpus Christi 1989, no pet.).

---

[4]"Theft" is the unlawful appropriation of property with intent to deprive the owner of the property.  TEX. PENAL CODE ANN. § 31.03(a) (Vernon Supp. 2010).  A person acts with intent "with respect to the nature of his conduct . . . when it is his or her conscious objective or desire to engage in the conduct. . . ."  TEX. PENAL CODE ANN. § 6.03(a) (Vernon 2003).  In a burglary prosecution, the specific intent to commit theft may be inferred from the circumstances. *Hawkins v. State*, 467 S.W.2d 465, 466 (Tex. Crim. App. 1971).

The facts of this case parallel those of *Villarreal*. The evidence shows that Moore's home was forcibly entered and her property was taken. It is undisputed that Johnson's fingerprint was found inside the residence on a CD case "that had been moved from where they were at for the children." Moore did not know Johnson and had never seen him before the day of the trial. Moore testified that no one had permission to be in her home that day. Because there was no occasion for Johnson's presence inside the home, it was reasonable for the jury to infer that the fingerprint must have been left during the burglary.[5] Accordingly, we overrule Johnson's point of error and affirm the judgment.

Josh R. Morriss, III
Chief Justice

Date Submitted:     November 23, 2010
Date Decided:       November 24, 2010

Do Not Publish

---

[5]Johnson acknowledges that "the fingerprints of an accused, which necessarily must have been made at the time of the burglary, are sufficient to sustain a burglary conviction without further evidence of identification." *Phelps*, 594 S.W.2d at 435; *Hernandez v. State*, 190 S.W.3d 856, 864 (Tex. App.—Corpus Christi 2006, no pet.); *Villarreal*, 79 S.W.3d at 811.